**Rebecca Ann FRASER, Plaintiff–Appellant,**

v.

**Carol GOODALE; Jeff Erwin; Terri McKinnis; United States Bancorp, a federal insured banking corporation; United States Bank National Assoc., a federal insured banking corporation, Defendants–Appellees.**

No. 01–36018.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2003.

Filed Sept. 8, 2003.

**1034**

Craig A. Crispin, Crispin & Associates, Portland, OR, for the plaintiff-appellant.

Janine C. Blatt, Jeffrey J. Druckman, Bruckman & Associates, Portland, OR, for the defendants-appellees.

Daniel B. Kohrman, AARP Foundation Litigation, Washington, D.C., for the amicus.

Carl G. Kiss, Portland, OR, for the amicus American Diabetes Association.

Before: LAY,[*] WALLACE, and TALLMAN, Circuit Judges.

Opinion by Judge WALLACE; Dissent by Judge TALLMAN

## OPINION

WALLACE, Senior Circuit Judge:

Fraser sued her former employer, United States Bancorp (Bank) under the Americans with Disabilities Act (ADA) and Or. Rev.Stat. § 659.436, contending the Bank discriminated against her because of her diabetes. She appeals from the Bank's summary judgement, arguing the district court erred in concluding that she failed to demonstrate a genuine issue of material fact as to whether her diabetes substantially limited her ability to eat, care for herself, think, and communicate. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.

---

[*] Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I

Fraser suffers from type I insulin-dependent diabetes with recurring acidosis complicated by pulmonary impairment. Her diabetes is severe and life-threatening. Her diabetes is "brittle," meaning that her blood sugar levels are very difficult to control because her glucose levels tend to swing fairly quickly high or low. Her physician, Dr. Lockwood, explained that at the time of the Bank's allegedly unlawful conduct, her diabetes required four or more daily blood sugar tests (which each take several minutes to complete), and multiple injections of varying amounts and types of insulin or glucagon. The amount or type of insulin she needs depends on how much she ate, how active she was that day, her blood pressure, kidney function, infections, circulation, etc. This requires her to monitor carefully her day's diet, activities, and other similar factors. If she fails, she will find herself in a life-threatening situation. Unlike the average person, Fraser states that if she gets a scrape, "it can lead to gangrene in nothing flat because of the severity of [her] diabetes." In short, viewing the evidence in a light most favorable to Fraser, Fraser suffers from a very onerous and life-threatening form of diabetes.

Beginning in June 1998, Fraser worked as a Senior Account Specialist for the Bank. In mid-November of 1998, Fraser's supervisor, Jeff Erwin, notified Fraser that she may not eat at her desk. Later, Fraser recorded her blood sugar as "dangerously low 46." Her normal range is typically between 80 and 180. Minutes later, she became disoriented as her blood sugar dropped further to 34. She had food in her desk, but because of Erwin's earlier admonition, she first explained to him her immediate situation and sought his permission before eating. Erwin told her to come back when she had an intelligent question to ask. Fraser became even more disoriented and her memory was so impaired that she could not remember how to use the telephone. She purchased candy from a vending machine, but her glucagon levels were so low that the candy did not help enough. She again sought Erwin's permission to do something about her current situation, but to no avail. Fraser eventually passed out in the lobby of the Bank building. With her husband's and a co-worker's assistance, she finally arrived home and injected glucagon until her blood sugar came back to a normal level.

In November 1998, Fraser wrote to Erwin's supervisor, Joe Ledbetter, complaining about Erwin's actions. Ledbetter indicated that he was investigating her complaint. Ledbetter assured Fraser that Erwin "would be dealt with," but so far as Fraser is aware, Erwin was never disciplined. On March 12, 1999, the Bank terminated her employment. Fraser brought this action, alleging that from November 20, 1998, through March 3, 1999, she was subjected to retaliation for filing her complaint, including harassment, a change of assignment, a change of workstation, increased scrutiny, failure to pay benefits, threats to sue, contrived poor performance evaluations, and a host of other employment actions. Fraser sued for failure to make reasonable accommodations, 42 U.S.C. § 12111(9), retaliation for exercising her rights, *Id.* § 12203(b), discriminatory discharge, *Id.* § 12112(a), disability discrimination under state law, Or.Rev.Stat. § 659.436, and intentional infliction of emotional distress.

The Bank moved for summary judgment on all claims. Fraser voluntarily withdrew her emotional distress claim. The Bank argued that Fraser did not present a genuine issue of material fact as to whether she was disabled under the ADA. The district court agreed, concluding that Fraser gave

only "generalities and speculation concerning how she *might have been affected* if her blood glucose level was not well-controlled, but has failed to produce specific, admissible evidence that she was, in fact, substantially limited during the relevant period of time." *Fraser v. U.S. Bancorp,* 168 F.Supp.2d 1188, 1194 (D.Or.2001). Fraser appeals, contending that she was disabled. She argues that even if she was not disabled, her retaliation claim may proceed because she has a good faith belief that she is disabled.

## II.

■ We must first assure ourselves that we do not erroneously rely on evidence outside the summary judgment record. In reviewing a summary judgment, "we are limited to the ... evidence available to the court at the time the motion was made." *Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1121 (9th Cir.1994); *Schneider v. County of San Diego,* 28 F.3d 89, 92 (9th Cir.1994).

The Bank argues that Fraser cites to material outside the summary judgment record, namely, pages 10 and 99 of Dr. Lockwood's deposition, and pages 67 and 159 her own deposition. We have not found these pages in the summary judgment record, and therefore do not consider them in our review.

The Bank further argues that Fraser's claim that she is a brittle diabetic cannot be considered on appeal because it is based on an excerpt to her deposition which the Bank contends is not part of the record. The district court concluded that Fraser demonstrated sufficient evidence on the summary judgment record that she is a brittle diabetic. *Fraser,* 168 F.Supp.2d at 1191.

■ In her deposition, Fraser relied on her diary, which was attached to her deposition. The contents of the diary, if admissible, may be relied upon in the summary

judgment proceeding. Fed.R.Civ.P. 56(e); *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir.2002) ("A trial court can [ ] consider [only] admissible evidence in ruling on a motion for summary judgment."). The Bank argues that because the diary is inadmissible hearsay, she may not rely on it to create a genuine issue of material fact. The Bank asked the district court to strike the diary from the record, but the district court did not rule on this request.

Fraser argues that the Bank's request to strike was not a proper formal motion to strike under the local rules for the District of Oregon. Fraser would have us conclude that the Bank waived its hearsay objection to the diary. However, the Bank's objection was clear, specific, and timely made to the district court in its reply motion for summary judgment. The Bank's evidentiary objection was preserved. *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1003 (9th Cir.2002) ("In order to preserve a hearsay objection, a party must either move to strike the affidavit or otherwise lodge an objection with the district court"); *Perez v. Volvo Car Corp.,* 247 F.3d 303, 314–15 (1st Cir.2001) (formal motions to strike unnecessary to preserve an argument that an affidavit failed Rule 56(e)'s requirements).

■ Nonetheless, we need not decide whether the diary itself is admissible. It would be sufficient if the contents of the diary are admissible at trial, even if the diary itself may be inadmissible. At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents. *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir.2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure

56."); *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir.1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.") (internal quotation marks and citation omitted).

The contents of the diary are mere recitations of events within Fraser's personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways. Fraser could testify to all the relevant portions of the diary from her personal knowledge. Fed. R.Evid. 602. If she forgets the exact dates or the details of the event, she may be able to use the diary to refresh her recollection. Fed.R.Evid. 612. Indeed, even inadmissible evidence may be used to refresh a witness's recollection. *United States v. Frederick*, 78 F.3d 1370, 1376 (9th Cir.1996); *United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir.2001); *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir.1997). If the diary fails to refresh her recollection, she might still be able to read the diary into evidence as a recorded recollection under Fed.R.Evid. 803(5).

Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion. *Accord Hughes v. United States*, 953 F.2d 531, 543 (9th Cir.1992) (litigation adviser's affidavit may be considered on summary judgment despite hearsay and best evidence rule objections; the facts underlying the affidavit are of the type that would be admissible as evidence even though the affidavit itself might not be admissible); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir.1990) (hearsay evidence produced in an affidavit may be considered on summary judgment if the declarant could later present the evidence through direct testimony); *Williams v. Borough of W. Chester*, 891 F.2d 458, 465 n. 12 (3d Cir.1989) ("hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. in a form that would be admissible at trial.") (internal quotation marks omitted).

In holding that the contents of the diary may be considered at the summary judgment stage, we make no ruling on the admissibility of the diary. We leave this determination to the district court if Fraser seeks to admit the diary itself into evidence.

### III.

■ Moving to the merits, we consider Fraser's claims that the Bank failed to make reasonable accommodations, in violation of 42 U.S.C. § 12111(9), retaliated against her for exercising her rights, in violation of 42 U.S.C. § 12203(b), wrongfully terminated her employment, in violation of 42 U.S.C. § 12112(a), and discriminated against her based on her disability, in violation of Or.Rev.Stat. § 659.436. "[W]e interpret Or.Rev.Stat. § 659.436 consistently with the ADA." *Hutton v. Elf Atochem N. Am.*, 273 F.3d 884, 891 n. 1 (9th Cir.2001). The district court held that Fraser is not disabled under the ADA, and therefore dismissed her federal and state discrimination claims, and dismissed her action. Fraser's argument on appeal is that she demonstrated a genuine issue of material fact as to whether she is disabled under the ADA. We review the district court's summary judgment de novo, and we view the facts in a light most favorable to Fraser. *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1229 (9th Cir.2003).

### A.

The ADA defines a disability as:

(A) a physical or mental impairment that substantially limits one or more of

the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Like the parties to this appeal, we consider only subsection (A). Our consideration involves three inquiries: (1) we determine whether Fraser's diabetes is a physical impairment, (2) we identify the life activity on which Fraser relies, and we determine whether this activity is a major life activity, and (3) we determine whether the impairment substantially limits the major life activity. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

### (1).

■ We have little difficulty in concluding that diabetes is a "physical impairment" under the ADA. While the persuasive authority of Equal Employment Opportunity Commission (EEOC) regulations such as 28 C.F.R. § 1630.2 remains unclear, we give weight to the federal regulations defining "disability" under the pre-ADA Rehabilitation Act of 1973 such as 45 C.F.R. § 84.3. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184, 194, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Bragdon,* 524 U.S. at 632, 118 S.Ct. 2196. Like the parties, we assume without deciding that the EEOC regulations are reasonable. *See EEOC v. United Parcel Serv., Inc.,* 306 F.3d 794, 801 n. 4 (9th Cir.2002) (similarly assuming the reasonableness of the EEOC regulations on the definition of disability). Under 45 C.F.R. § 84.3(j)(2)(i), a "physical impairment" is any physiological condition affecting the neurological, musculoskeletal, respiratory, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, endocrine, or special sense organs. Diabetes is a physical impairment under the ADA because it is a physical condition affecting the digestive, hemic, and endoc-

rine systems. *See Bragdon,* 524 U.S. at 637, 118 S.Ct. 2196(asymptomatic HIV is a physical impairment because it causes immediate abnormalities in a person's blood). Also, EEOC regulations specifically include diabetes in the definition of a physical impairment. 24 C.F.R. § 9.103; 28 C.F.R. § 41.31(b)(1); 28 C.F.R. § 35.104; 29 C.F.R. § 34.2.

### (2).

Turning to inquiry 2, Fraser is substantially limited by her impairment if she is unable to perform or is significantly restricted in a major life activity. 29 C.F.R. § 1630.2(j)(1). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 45 C.F.R. § 84.3(j)(2)(ii). In deciding whether Fraser's impairment is substantially limiting, we must consider the nature and severity of the final impairment, 29 C.F.R. § 1630.2(j)(2)(i), the duration or expected duration of the impairment, *id.* § 1630.2(j)(2)(ii), as well as the permanent or long term impact of the impairment. *Id.* § 1630.2(j)(2)(iii).

All this must be analyzed in conjunction with the mitigating measures Fraser adopts. *Sutton v. United Air Lines,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). In *Sutton,* twin sisters with severe myopia contended they were discriminated against by an airline. *Id.* at 475–76, 119 S.Ct. 2139. The twins wore corrective lenses which gave them vision of 20/20 or better. *Id.* at 475, 119 S.Ct. 2139. The Supreme Court held that the twins were not disabled. *Id.* at 488–89, 119 S.Ct. 2139. The disability determination does not depend upon hypotheticals such as what the twins would face if they did not wear glasses. *Id.* at 482, 119 S.Ct. 2139. Instead, the disability determination "depends on whether the limitations an indi-

vidual with an impairment *actually* faces are in fact substantially limiting." *Id.* at 488, 119 S.Ct. 2139. In Fraser's case, we consider both artificial mitigating measures, such as insulin injections and other drugs, as well as natural mitigating measures, such as the body's natural response to cope with physical impairments. *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

Not all mitigating measures cure a person of an underlying impairment. We therefore review the effectiveness of the mitigating measure at preventing or ameliorating the underlying impairment. Further, the effectiveness of a mitigating measure is not always static. Like Fraser, a person could be just as faithful to a treatment regimen, and yet be more impaired at some times than at others.

Nor should we overlook the side effects of the mitigating measure, as these can also be impairing. *See Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 521, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (negative side effects of hypertension medication might substantially limit a major life activity, but not reaching the issue because the petitioner did not seek certiorari on this question); *Sutton,* 527 U.S. at 488, 119 S.Ct. 2139(observing that petitioners concede that they "do not argue that the use of corrective lenses in itself demonstrates a substantially limiting impairment").

We must also consider the burden of the mitigating measure, as this bears directly upon the impact of the underlying physical impairment. For instance, the burden of following a healthy diet is slight, whereas the brittle diabetic's burden of a perpetual treatment regime demanding a careful balance of blood sugar, food intake, and activity levels is greater. *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 924 (7th Cir. 2001) (comparing simple dietary restric-

tions to what the insulin-dependent diabetic plaintiff must endure).

In sum, before determining whether a person's impairment is substantially limiting, we look at the nature, severity, duration, and impact of the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Under *Sutton,* we consider the mitigating measures the person uses, their effectiveness, their side effects and their burdens. This analysis requires a sensitive, fact-based analysis that knows no bright lines. We do not decide whether every diabetic is disabled, and we do not decide whether every severely obese person is not disabled. Instead, "[w]hether a person is disabled under the ADA is an individualized inquiry." *Thornton v. McClatchy Newspapers, Inc.,* 261 F.3d 789, 794 (9th Cir.2001); *but see Albertson's,* 527 U.S. at 566, 119 S.Ct. 2162(recognizing some impairments might constitute a per se disability).

Whether eating is a major life activity under the ADA is a question of first impression in our Circuit. Each of our sister circuits confronted with this question have concluded that eating is a major life activity. *Lawson,* 245 F.3d at 923–24(7th Cir.2001) (diabetes); *Forest City Daly Hous., Inc. v. Town of N. Hempstead,* 175 F.3d 144, 151 (2d Cir.1999) (dicta in case involving an assisted living facility); *Land v. Baptist Med. Ctr.,* 164 F.3d 423, 424 (8th Cir.1999) (peanut allergy).

Federal regulations describe major life activities as including functions "*such as* caring for oneself, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii) (emphasis added); 29 C.F.R. § 1630.2(i). This illustrative list of major life activities requires the activity only to be of "comparative importance" and "central to the life process itself," and it need not have a public, economic, or daily character.

*Bragdon,* 524 U.S. at 638, 118 S.Ct. 2196 (holding that reproduction and sexual dynamics are major life activities); *see also Toyota Motor,* 534 U.S. at 197, 122 S.Ct. 681. Not only is eating of comparative importance, but it is *integral* to daily existence, *Lawson,* 245 F.3d at 923, even more so than other activities specifically listed as major life activities. For instance, one can survive without seeing, hearing, speaking, or walking. One cannot survive (absent medical technology) without eating.

However, just because a certain broad activity is of central importance to most people's daily lives does not mean that every sub-type of the activity is also a major life activity. For instance, some manual tasks are major life activities, but not every manual task is a major life activity. *Toyota Motor,* 534 U.S. at 197, 201, 122 S.Ct. 681("the manual tasks unique to any particular job are not necessarily important parts of most people's lives").

■ Like our sister circuits, we hold that, broadly speaking, eating is a major life activity. However, eating specific types of foods, or eating specific amounts of food, might or might not be a major life activity. If a person is impaired only from eating chocolate cake, he is not limited in a major life activity because eating chocolate cake is not a major life activity. On the other hand, peanut allergies might present a unique situation because so many seemingly innocent foods contain trace amounts of peanuts that could cause severely adverse reactions.

These issues can be addressed in other cases. As to the type of eating that Fraser alleges, it is a major life activity and certainly falls within those activities that are of central importance to most people's daily lives. Not only must she not eat certain foods, but she must carefully assess her blood sugar before putting anything into her mouth. It is the physical activity of eating in general that she ar-

gues is impaired, and we agree that this activity is a major life activity under the ADA.

(3).

With this understanding of Sutton's limitations and impairment, we are in a place to determine whether her impairment "substantially limits" the major life activity. The EEOC regulations explain that a person is "substantially limited" if she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).

The major life activity need not be completely impossible to perform. For instance, in *Bragdon,* the Supreme Court held that a woman suffering from asymptomatic HIV was substantially limited in the major life activity of reproducing because she risks infecting the man and her child. 524 U.S. at 639–41, 118 S.Ct. 2196. The Supreme Court recognized that the HIV-infected woman could still reproduce, but concluded that she was nonetheless substantially limited. *Id.* "The Act addresses substantial limitations on major life activities, not utter inabilities." *Id.* at 641, 118 S.Ct. 2196 (holding that even if there was only an 8% risk of transmitting HIV to the child, HIV is still a substantial limitation on reproduction).

However, that Fraser simply *differs* from the average person in how she performs a major life activity is patently insufficient for a substantial limitation. *Albertson's,* 527 U.S. at 565, 119 S.Ct. 2162. Similarly, that Fraser merely suffers *some* limit does not mean she suffers a *substantial* limit. *EEOC v. United Parcel Serv. Inc.,* 306 F.3d 794, 802–03 (9th Cir.2002).

The Act "concerns itself only with limitations that are in fact substantial." *Albertson's*, 527 U.S. at 565, 119 S.Ct. 2162.

Fraser contends that her diabetes substantially interferes with the major life activities of (a) eating, (b) caring for herself, and (c) thinking and communicating. We address each life activity in turn, determining whether it is a major life activity and whether her impairment substantially limits the activity.

(a).

■■■ Though we hold that eating is a major life activity, we do not thereby invite all those on a diet to bring claims of disability. Not every impediment to the copious and tasty diets our waistlines and hearts cannot endure is a substantial limitation of the major life activity of eating. We must carefully separate those who have simple dietary restrictions from those who are truly disabled. At the same time, we must permit those who are disabled because of severe dietary restrictions to enjoy the protections of the ADA. Based on the summary judgment record here, we must determine whether Fraser presented a genuine issue of material fact as to whether her diabetes and her rigorous treatment regimen substantially limit the major life activity of eating.

Fraser's diabetes regimen is perpetual, severely restrictive, and highly demanding. Fraser must test her sugar several times daily, each test is painful, and takes close to five minutes to complete. She must vigilantly monitor what and how much she eats. She must time her daily shots and meals so carefully that it is not safe for her to live alone. (She could end up in the ambulance if she took too long a nap between a shot and breakfast.) She must always have certain foods available in case her blood sugar drops or skyrockets. She must always be able to take time to eat or give herself injections to balance her blood

sugar levels. She cannot put a morsel of food in her mouth without carefully assessing whether it will tip her blood sugars out of balance. She cannot skip or postpone a snack or meal without cautiously studying her insulin and glucagon levels. She must constantly, faithfully, and precisely monitor her eating, exercise, blood sugar, and other health factors, and even this is no guarantee of success. *See Lawson*, 245 F.3d at 924–25(concluding that similar evidence raised a jury question as to whether diabetes substantially limited Lawson's major life activity of eating); *Nawrot v. CPC Internat'l*, 277 F.3d 896, 904–05 (7th Cir.2002) (addressing a brittle diabetic's substantial limitations on the major life activity of thinking and caring for himself).

Unlike a person with ordinary dietary restrictions, Fraser must monitor much more than what and how much she eats. Unlike a person with ordinary dietary restrictions, she does not enjoy a forgiving margin of error. While the typical person on a heart-healthy diet will not find himself in the emergency room if he eats too much at a meal or forgets his medication for a few hours, Fraser does not enjoy this luxury.

As in *Lawson*, even when taking insulin, her ability to "regulate h[er] blood sugar and metabolize food is difficult, erratic, and substantially limited." *Lawson*, 245 F.3d at 924. Even when followed with utmost skill and faithfulness, Fraser's treatment regimen does not completely save her from the havoc her diabetes wreaks on her ability to eat normally:

> Q: [Counsel] mentioned several risks that Miss Fraser might face. Would those risks be significantly diminished if she followed a strict regimen of diet, closely monitoring her blood glucose levels, and properly administering her insulin?

A:  [Dr. Lockwood] To a certain extent, they would be aggravated by that ... [I]f a person is in really what·we call tight control, really good control, where her sugars are running down in the low hundreds most of the time, then her margin of error is reduced. So if ... she broke down her car and she couldn't get food, she would actually be closer to being in trouble than—than not.... And so the tight control in one way requires you to be really much more rigid in terms of your activity, and your margin of error is less.

Again, Dr. Lockwood explained:

A:  the closer you get to good control, the more problems you're going to have with reactions....[I]t's impossible, since we're giving, you know, insulin in sort of an artificial way, we are just trying to guess and—and anticipate what her needs are going to be.  ... [E]very meal is a little bit different and every day is slightly different in activity, even with the best of intentions.  So the diabetic is going to have wider swings, *no matter what they do,* than you or I....

(Emphasis added).  Dr. Lockwood then clarified further:

there was a study that came out several years ago that showed improving control with multiple injections and monitoring a lot reduces the long-term complications.  But that study also shows that when you do that, you increase the numbers of insulin reactions and hypoglycemic reactions.  Because as you get down towards that target, you're going to have some times when your blood sugar goes too low.

In short, Fraser presented evidence that the major life activity of eating is substantially limited because of her demanding and highly difficult treatment regimen.

In response, the Bank argues that *Lawson's* emphasis on the dire consequences of failing the treatment regimen runs counter to *Sutton's* command not to consider the plaintiff's hypothetical state.  The Bank misreads *Lawson.*  *Lawson* considered these consequences because diabetics like Lawson and Fraser suffer debilitating insulin reactions and significant limits on their major life activities despite their adherence to the treatment regimen. *Lawson,* 245 F.3d at 926.  *Sutton* requires us to consider Fraser's actual state.  527 U.S. at 488, 119 S.Ct. 2139.  *Sutton* does not require us to pretend that treatment measures are completely effective when there is evidence that they are not.

The Bank suggests that if Fraser carried a backpack with food and insulin shots, then she could control her blood sugar levels.  The Bank contends that having to carry a backpack is not substantially limiting.  This belittles Fraser's impairment.  Even though she can (and does) carry a backpack, Fraser's perpetual, difficult, and multifaceted treatment regimen substantially limits the major life activity of eating.  *Accord Lawson,* 245 F.3d at 924–25.  Simply having the means to control an illness does not make controlling the illness easy.

Moreover, the backpack defense does not help here.  If Fraser is not substantially limited in a major life activity because she could carry a backpack, then no diabetic is disabled, since all could carry backpacks.  This goes too far because no employer would have to accommodate diabetics by letting them *use* the backpack.  The injustice of this conclusion is best illustrated by the facts here: Fraser had food with her at her desk, but her employer refused to let her eat it.  A backpack of food and insulin shots is nothing but a heavy accessory in light of an employer's refusal to accommodate.  As Dr. Lockwood concluded:

she's limited ... by the requirements of—of the condition itself, just to main-

tain. So if she can't take a break to eat, can't take a break to get her shot, can't take a break to test herself, that's a potential problem.

The Bank also asserts that, unlike Fraser, Lawson suffered a host of intermediate complications from his diabetes, such as proliferative diabetic retinopathy, impotence, proteinuria, and periodic episodes of limited joint mobility syndrome. *Lawson*, 245 F.3d at 919. Fraser, on the other hand, suffered from different ailments, such as adult respiratory distress syndrome, ulcers, chronic nausea, and diabetic gastroparesis. This difference is not critical to the Bank's summary judgment motion, as it does not demonstrate that Fraser's impairment is not substantially limiting. The Seventh Circuit likewise considered Lawson's intermediate complications irrelevant to the disability determination, as it did not detail whether Lawson's ailments are serious, and it did not even mention these ailments as being relevant to the disability issue. *Lawson*, 245 F.3d at 924. In fact, after listing only the evidence that is similar to Fraser's evidence, the court concluded that "*[t]his* evidence is sufficient for a jury to find that Mr. Lawson is substantially limited," implying that other evidence was not necessary. *Id.* (emphasis added).

The Bank contends that Dr. Lockwood testified that as long as Fraser keeps regular habits and can keep her blood glucose normal, she would not have any substantial limitations. The Bank begs the question. The problem with a brittle diabetic is that it is very difficult to keep her blood glucose normal.

(b).

■ Fraser next argues that she is significantly limited in caring for herself. Caring for oneself is a major life activity, 29 C.F.R. § 1630.2(i), but Fraser has not presented evidence that her diabetes substantially limits her in this activity.

Fraser argues that *if* her blood sugar levels are too high or too low, she has difficulty caring for herself. She does not argue that she is significantly limited in caring for herself because of her rigorous treatment regimen, which would be similar to her argument that she is significantly limited in the major life activity of eating. She instead argues that when she is unsuccessful in attaining a proper blood sugar level, she cannot properly care for herself. She describes her past difficulties in bathing, walking, getting ready for work, driving, and other such activities.

The problem is that Fraser does not show that these effects occurred often enough to constitute a substantial limitation. While there is evidence that Fraser is substantially limited in eating because of her severe and demanding restrictions, there is no evidence that she is so unsuccessful in monitoring her blood sugar levels that she is substantially limited in caring for herself. *Accord Orr v. Wal–Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir. 2002). In her brief, she argues that she presented evidence that in mid-November 1998, in February of 1999, and twice in March of 1999, she suffered insulin reactions that severely limited her ability to care for herself. But being unable to care for oneself four times during a five month period is not a *substantial* limitation. She is not "significantly" restricted in caring for herself as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 353 (4th Cir.2001) (holding that one or two nocturnal seizures a week and occasional daytime seizures do not substantially limit plaintiff's ability to care for herself). We therefore affirm the district court's conclusion that Fraser failed to demonstrate a genuine issue of

material fact that she was substantially limited in caring for herself.

### (c).

■ Lastly, Fraser argues her diabetes substantially limits her major life activity of thinking and communicating. Fraser argued to the district court that her impairment "affects several major life activities, including ... learning ... When [Fraser's] blood sugar falls, [she] ... is unable to concentrate or communicate effectively...."

However, her "thinking and communicating" argument fails for the same reason her "caring for herself" argument failed: she demonstrated no genuine issue of material fact that she is so unsuccessful in maintaining a proper blood sugar level to limit substantially her life activity of thinking and communicating. In her brief, she argues that she presented evidence that she suffered insulin reactions that impaired her ability to think in November of 1998, in January of 1999, and in March of 1999. Being unable to think and communicate three times in a five month period is not a substantial limitation. The ADA requires Fraser to "be presently—not potentially or hypothetically—substantially limited to demonstrate a disability." *Sutton*, 527 U.S. at 482, 119 S.Ct. 2139. Absent evidence that Fraser suffers such frequent insulin reactions that she is substantially limited in the major life activities of thinking and communicating, we must affirm the district court on this issue. We do not rule out the possibility that a future claimant will be able to present evidence that she suffers such frequent insulin reactions that, despite her mitigating measures, she is substantially limited in these activities.

### IV.

The district court granted the Bank summary judgment on Fraser's retaliation claims, concluding that Fraser's claim failed because she demonstrated no genuine issue of material fact as to the existence of a disability. Insofar as we hold that Fraser has presented a material issue of fact on her diabetes significantly limiting the major life activity of eating, we reverse and remand on that claim.

■ However, we agree with the district court that Fraser has not presented a genuine issue of material fact as to the major life activities of caring for herself, thinking, and communicating. Fraser argues that even if she is not disabled in the major life activities of caring for self, thinking, and communicating, she nonetheless has a good faith belief that she was disabled. She contends that this is sufficient to permit her retaliation claims to go forward on these major life activities. We do not decide the merits of her argument because Fraser failed to preserve this issue.

Fraser did not allege a good faith belief in her disability in her complaint. She instead alleged only that she was in fact disabled. When the Bank moved for summary judgment on all Fraser's claims, Fraser responded that she was disabled. At no time did she argue to the district court that even if she was not disabled, she still had a good faith belief that she was disabled.

Fraser argues that the Bank did not actually move for summary judgment on her retaliation claims. This assertion is contradicted by the Bank's motion for summary judgment, which sought judgment as to *all* Fraser's claims. On the last page of its memorandum in support of its motion for summary judgment, the Bank again clarified that it argued that because Fraser was not disabled under the ADA, "all four of her claims for disability discrimination fail." The Bank asked again for summary judgment on "all of Fraser's claims." The district court also correctly understood the Bank's motion, for it ex-

pressly granted the Bank summary judgment on Fraser's retaliation claim.

No exceptional circumstance justifies Fraser's failure to raise this argument in the district court, and so we decline to address her argument now. *Yang v. Cal. Dept. of Social Servs.,* 183 F.3d 953, 957–58 (9th Cir.1999); *Jones v. United States,* 121 F.3d 1327, 1332 (9th Cir.1997); *Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 300 (9th Cir.1989).

## V.

In sum, Fraser presented a genuine issue of material fact that her diabetes significantly limits her major life activity of eating. We reverse and remand the district court's disability summary judgment as to this major life activity together with its retaliation counterpart. We affirm the district court's summary judgment as to the major life activities of caring for herself, thinking, and communicating.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

TALLMAN, Circuit Judge, dissenting in part:

To "eat" means "to take in through the mouth as food: ingest, chew, and swallow in turn." *Webster's New Collegiate Dictionary* 355 (1979). Nothing in this record suggests that Rebecca Fraser has any difficulty ingesting food, chewing food, or swallowing food. It follows that she is not substantially limited in the major life activity of eating, and I respectfully dissent from that portion of today's opinion so holding.