NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 14 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PACIFIC NORTHWEST SOLAR, LLC, | No. 22-35186 |
| Plaintiff-Appellee, | D.C. No. 6:16-cv-00114-SEH |
| v. | |
| NORTHWESTERN CORPORATION, Northwestern Energy, a Delaware corporation, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| PACIFIC NORTHWEST SOLAR, LLC, | No. 22-35224 |
| Plaintiff-Appellant, | D.C. No. 6:16-cv-00114-SEH |
| v. | |
| NORTHWESTERN CORPORATION, DBA Northwestern Energy, a Delaware corporation, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted February 8, 2023

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Portland, Oregon

Before:  MURGUIA, Chief Judge, and FORREST and SUNG, Circuit Judges.

In June 2016, the Parties contracted for the sale of electricity from four proposed solar farms at a standard rate set for Northwestern Energy (Northwestern) by the Montana Public Service Commission (MPSC). Two weeks later, the MPSC suspended Northwestern's standard rate. Northwestern repudiated the contracts, and Pacific Northwest Solar, LLC (Pacific) sued for breach.

The district court held that Northwestern breached the four contracts when it repudiated them. The case proceeded to a damages-only trial, where the jury returned a verdict of $480,000 in favor of Pacific. Both Parties now appeal.

We conclude the district court erred by sua sponte issuing a pre-trial order excluding evidence of Pacific's other solar projects and development fees, and the error caused prejudice by preventing Pacific from presenting its full case at trial. We also conclude the district court erred by instructing the jury it could award lost profits. We reverse, vacate the judgment, and remand for a new damages trial.

**Pacific's Appeal**

Pacific challenges the district court's sua sponte pre-trial order excluding evidence of other development projects, its evidentiary rulings at trial regarding the financial model underlying Pacific's damages evidence, and its refusal to instruct

the jury that a breaching party cannot take advantage of its own wrong. Pacific also contends that a new district court judge should be assigned on remand.

1. **In Limine Exclusion.** Before trial, the district court sua sponte excluded any evidence of Pacific's projects and development fees other than that which concerned the four contracts at issue in this case. The entirety of the district court's analysis consisted of a single footnote that cited without explanation to Federal Rules of Evidence 401, 402, 403, and 611(a). We normally review the district court's evidentiary rulings for abuse of discretion. *United States v. Obendorf*, 894 F.3d 1094, 1098 (9th Cir. 2018). However, where the district court fails to engage in any explicit Rule 403 balancing on the record, we review de novo. *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1008 (9th Cir. 2007) (citing *United States v. Boulware*, 384 F.3d 794, 808 n.6 (9th Cir. 2004)), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008). Because the district court acted sua sponte, the record lacks any adversarial presentation by the Parties from which we might deduce the court's reasoning. Accordingly, we review de novo.

The heart of Pacific's theory of the case involved proving the value of the four contracts at the time of Northwestern's breach. *See Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000) ("When the defendant's conduct results in the loss of an income-producing asset with an ascertainable market value, the most accurate and immediate measure of damages is the market value of the asset at the time of

3

breach . . . "). At trial, the jury heard wildly disparate evidence from the Parties' competing experts regarding the proper valuation of the four contracts at issue. Pacific's evidence that it had received payments on five other solar projects between 2015 and 2019—which the district court's pre-trial order excluded—had significant probative value, especially considering Northwestern's argument that Pacific's potential to earn developer fees on the four projects was speculative. The probative value of the excluded evidence would not be substantially outweighed by a danger of unfair prejudice or any of Rule 403's other concerns. Northwestern could have minimized any prejudice through cross-examination. We conclude the court's pre-trial decision to exclude all evidence of other development projects on Rule 403 grounds was error. *See United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (recognizing that Rule 403 is "an extraordinary remedy to be used sparingly" (internal citation omitted)).

We also conclude the error more likely than not affected the verdict by restricting Pacific's ability to present its full case. *See Obrey v. Johnson*, 400 F.3d 691, 699–701 (9th Cir. 2005) (explaining that when reviewing the effect of erroneous evidentiary rulings, we begin with a presumption of prejudice). Accordingly, we reverse and remand for a new trial.

2. **Refreshing Recollection.** The district court abused its discretion by preventing Pacific's counsel from refreshing the recollection of Pacific's founder

using the financial model the founder created to value the four contracts. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (recognizing that it is well established that "even inadmissible evidence may be used to refresh a witness's recollection"). Because we reverse and remand based on the district court's exclusion of evidence, we need not determine whether this error prejudiced Pacific.

**3. Other Evidentiary Rulings.** The district court did not abuse its discretion by refusing to allow Pacific's financial model into evidence, or by refusing to allow Pacific's founder to testify about the model's contents. Pacific contends that the financial model falls under either the business records or recorded recollection hearsay exceptions. Even if the financial model could satisfy each element of a hearsay exception, Pacific did not lay the proper foundation at trial to show either that the financial model "was kept in the course of a regularly conducted activity of a business" and that "making the record was a regular practice of that activity," Fed. R. Evid. 803(6), or that it was "made or adopted by the witness when the matter was fresh in the witness's memory," Fed. R. Evid. 803(5).

Pacific argues in the alternative that the district court should have allowed Pacific's founder to testify as an expert or hybrid witness about the model. While expert witnesses may base their opinions on otherwise inadmissible hearsay, Pacific's counsel did not lay sufficient foundation to establish its founder as an expert witness. *See* Fed. R. Evid. 702 (requiring a party to show, among other

5

things, that a witness is "qualified as an expert by knowledge, skill, experience, training, or education" and their testimony is "based on sufficient facts or data" and "the product of reliable principles and methods"). Even if the district court erred in refusing to allow Pacific's founder to testify about the model, any error was harmless because Pacific's expert offered significant testimony regarding the model and its inputs.

4. **Proposed Jury Instruction.** The district court did not err by rejecting Pacific's proposed jury instruction. Pacific sought a jury instruction based on a Montana statute that provides that "[a] person may not take advantage of the person's own wrong." Mont. Code Ann. § 1-3-208. "A district court . . . commits error when it rejects proposed jury instructions that are properly supported by the law and the evidence." *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (citation omitted). In Pacific's view, Northwestern was taking advantage of its own breach by arguing that Pacific's damages were too speculative; after all, Northwestern's breach is what prevented Pacific from fully developing the projects. However, Pacific was not entitled to damages equal to the projects' potential value if completed. Rather, Pacific was entitled to damages equal to the value of the four proposed projects in June 2016, when Northwestern repudiated the contracts. Therefore, Pacific's inability to further develop the projects is

6

irrelevant to their value at the time of the breach, and any error in rejecting the proposed jury instruction was harmless. *See Clem*, 566 F.3d at 1181–82.

**5. Judicial Bias.** We do not order reassignment of the case on remand.[1] A district court judge's conduct warrants reassignment "only under 'unusual circumstances or when required to preserve the interests of justice.'" *Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017) (citing *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012)). The court's sua sponte objections, questioning of witnesses, and explanations to the jury all fall under the broad umbrella of its inherent authority to manage a trial. *See Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986) ("Questions by a court indicating skepticism are not improper when the witnesses are permitted to respond[.]"); *id.* ("[I]t is within the trial court's discretion to call attention to evidence it believes important" so as to "aid the jury in reaching a just conclusion[.]"); *id.* ("Comments by the court [that] reflect unfavorably on counsel's conduct at trial are not prejudicial unless of a serious nature."). The district court's pre-trial exclusion of Pacific's comparator evidence, while erroneous, also does not justify reassignment. We conclude nothing in the record "discloses actual bias on the part of the trial judge or leaves [us] with an abiding impression that the judge's remarks and questioning of

---

[1] Although Pacific waived its judicial bias argument by failing to raise it below, Northwestern waived its waiver argument by addressing Pacific's claim on the merits. *See Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010).

7

witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) (citation omitted).

**Northwestern's Appeal**

Northwestern argues first that the district court erred by finding it liable for breach of contract because the MPSC's standard rate suspension made Northwestern's continued performance of the four contracts impossible. Northwestern next contends that the district court mistakenly instructed the jury it could award lost profits. Because the Parties' contracts preclude liability for lost profits, Northwestern argues the damages judgment must be reduced to zero.

**1. Impossibility.** We agree with the district court that Northwestern is liable for breach of contract.[2] Northwestern concedes the four power-purchase agreements are fully executed contracts that complied with the then-legal standard rate. The MPSC's subsequent rate suspension did not affect executed contracts and could not render performance impossible.

The plain text of the MPSC's rate suspension does not apply to the performance of existing executed contracts. The MPSC itself correctly explained it did not have the power to affect existing contracts, as evidenced by its citation to

---

[2] We review de novo both the district court's finding of liability and denial of Northwestern's motion for a judgment as a matter of law on the issue of liability. *Ostad v. Oregon Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003); *see also Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1132 (9th Cir. 2021).

*Colstrip Energy Limited Partnership v. Montana Power Company*, 1995 Mont. Dist. LEXIS 206, at *4 (Mont. Dist. Ct. Jan. 18, 1995) (holding that the Montana Code "does not confer jurisdiction on the [MPSC] to adjudicate disputes over executed contracts"). The MPSC also properly instructed the parties that "[a]ny dispute between [Northwestern] and these projects should be viewed as a contract issue to be resolved in the appropriate court."

Northwestern places significant emphasis on the MPSC's repeated finding that the four contracts did not satisfy the rate suspension's safe-harbor provision. The suspension's safe harbor was available if, at the time of the rate suspension, the qualified facility had previously submitted to Northwestern both a signed power-purchase agreement and a signed interconnection agreement (but did not yet have a fully executed contract). If those safe-harbor requirements were met, then Northwestern could still choose to pay the suspended rate, or a qualified facility could seek a "legally enforceable obligation" that would require Northwestern to pay the suspended rate. But qualified facilities that already had fully executed contracts at the time of the rate suspension, like Pacific, did not need the safe harbor. Specifically, Pacific did not need to rely on Montana Administrative Rule § 38.5.1905(1)(a) to execute a new contract, nor did it need to seek a legally

enforceable obligation from the MPSC. Quite simply, the MPSC's orders had no legal effect on the Parties' agreements.[3]

**2. Lost Profits Jury Instruction.** The district court erred in instructing the jury that it could award lost profits.[4] The district court issued a jury instruction providing that "[d]amages are recoverable in this action for loss caused or for profit and other gain prevented by Defendant's breach only to the extent the evidence affords a reasonable basis for estimating their amount in money." However, each of the four contracts at issue expressly precludes the recovery of lost profits. Under the plain language of the contracts, Pacific was therefore not entitled to lost profits at trial.

We review jury-instruction errors in civil trials for harmless error. *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1243 (9th Cir. 2021). We reject Northwestern's argument that in seeking recovery of developer's fees on the four projects, Pacific was only seeking lost profits. *See Schonfeld*, 218 F.3d at 177. As a result, we do not reduce the amount of the judgment to zero. But because

---

[3] Because Pacific is not challenging the MPSC orders, either facially or as-applied, Pacific did not need to seek administrative review before proceeding to litigation.

[4] We review de novo whether the court's jury instructions correctly state the legal effect of the Parties' contracts. *See United States v. Renzi*, 769 F.3d 731, 755 (9th Cir. 2014).

10

we reverse and remand for a new trial on independent grounds, we do not otherwise decide whether the error was harmless.

The court orders that costs are taxed against Defendant-Appellant Northwestern. Fed. R. App. Proc. 39(a)(4).

**REVERSED, VACATED, AND REMANDED.**